# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

VELMA GROSS, EUGENE GROSS, )
and SIERRA GROSS, b/n/f VELMA )
GROSS )
 )
    Plaintiffs, )
 )
  v. )   3:11-cv-463
 )
RICHARD L. MAX, SR., and DELORES )
C. MAX, )
 )
    Defendants. )

## OPINION and ORDER

  Plaintiffs Velma and Eugene Gross purchased a home from Defendants Richard and

Delores Max in 2006, and three years later they discovered their daughter (Plaintiff Sierra Gross)

had lead poisoning.  On November 9, 2011, the Grosses filed this suit seeking recovery from the

Maxes under the Residential Lead-Based Paint Hazard Reduction Act ("RLPHRA").  In an

Opinion and Order dated August 2, 2012, I dismissed this case on the grounds that it was barred

by the statute of limitations.

  The Grosses have moved for reconsideration of that order [DE 21], and the arguments

they raise are more cogent and persuasive than those found in the mine-run of motions for

reconsideration, which tend to repeat arguments that were previously raised and rejected.

Nevertheless, after considering the motion in depth, I have ultimately found its arguments

unconvincing.  Thus, for the reasons explained in detail below, I once again conclude that the

Grosses' claims are time-barred and will deny their motion for reconsideration.

## FACTUAL BACKGROUND

The August 2, 2012 Opinion details the factual backdrop of this case, so I refer the uninitiated reader there and will only provide a more cursory sketch here. Velma and Eugene Gross purchased a home from Richard and Delores Max on November 10, 2006, have lived their since then, had their daughter Sierra in 2008, and discovered she had lead poisoning in the summer of 2009. On November 9, 2011, the Grosses filed their Complaint against the Maxes. The Grosses alleged that the Maxes violated RLPHRA when they bought the house by failing to provide them with a lead paint hazard information pamphlet, disclose the presence of any known lead-based paint or lead-based paint hazards, or permit the Grosses a 10-day inspection period as required by 42 U.S.C. § 4852d. A new fact offered in the motion for reconsideration is that the Grosses first "consulted with an attorney concerning their rights with respect to the lead hazards in their home and the lead poisoning that was suffered by Sierra" on August 18, 2009.[1]

My August 2, 2012 Opinion concluded that the Grosses' Complaint was time-barred. Here's the short version of how I arrived at that conclusion. First, the injury the Grosses suffered was the failure to receive the proper RLPHRA disclosures (rather than the lead poisoning itself). Second, the four-year, catch-all federal statute of limitations (28 U.S.C. §

---

[1]The date of the Grosses' meeting with their attorney when they first discovered their cause of action is not confirmed in an affidavit, but I can safely take judicial notice of it since it is unequivocally and repeatedly stated in the Grosses' own briefs [DE 21 at 4 and DE 23 at 12]. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1404 (7th Cir. 1997) (citing with approval the holding in *In re Lefkas Gen. Partners*, 153 B.R. 804, 807 (N.D. Ill. 1993) that "[j]udicial admissions . . . are not limited to statements made in the particular motion or application pending. Any 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings qualifies as a judicial admission."); *United States v. One Heckler–Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir. 1980) (holding that a representation in a brief, although "neither in a pleading nor an affidavit," nonetheless "may be treated as a [judicial] admission").

1658(a)) applies to RLPHRA claims. Third, the Grosses' claim accrued on November 10, 2006 when they bought the house. Therefore, their four-year limitations clock started ticking at that point, meaning that they had until November 10, 2010 to file their lawsuit. Their November 9, 2011 Complaint was thus filed one-year too late, and I dismissed it on that ground.[2]

It is the third step in this analysis – that the Grosses' claim accrued on November 10, 2006 – that is clearly the most legally complex and it is where the Grosses' motion for reconsideration rightly focuses most of its energy. The complexity of the issue derives from whether or not the "discovery rule" applies to this case. Under the discovery rule, "a claim accrues once the party performs the alleged unlawful act and once the party bringing a claim discovers an injury resulting from this unlawful act." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1139 (7th Cir. 1992). In their original briefing, the parties argued vigorously over whether the discovery rule applied to Section 1658(a) and to RLPHRA claims.

My August 2, 2012 Opinion ultimately punted on that issue. I concluded that I didn't need to "wade into [the] legal morass" of the discovery rule "because in this case the Grosses' claims are time-barred no matter whether the discovery rule applies or not." [DE 19 at 8.] First, if the discovery rule did not apply, then it's clear that the four-year limitations clock began

_____

[2]The August 2, 2012 Opinion dismissed the case pursuant to Rule 12(b)(6), though a Seventh Circuit opinion that was published a week later rightly points out that technically dismissal should have been pursuant to Rule 12(c). *See Richards v. Mitcheff*, __ F.3d __, 2012 WL 3217627, at *2 (7th Cir. Aug. 9, 2012) ("A plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings under Rule 12(c). This comes to the same thing as a dismissal under Rule 12(b)(6), and opinions, including some by this court, often use the two interchangeably. But in principle a complaint that alleges an impenetrable defense to what would otherwise be a good claim should be dismissed (on proper motion) under Rule 12(c), not Rule 12(b)(6).")

running on November 10, 2006 when the Grosses took ownership of the house and were not provided the necessary disclosures.

Moreover, even if the discovery rule did apply, I concluded that the four-year clock still started on November 10, 2006. This conclusion relied heavily on a First Circuit opinion from earlier this year, *Randall v. Laconia, NH*, 679 F.3d 1 (1st Cir. 2012). The facts of *Randall* are remarkably similar to this case: the plaintiff purchased a house from the defendant in July of 2003, was not provided with the proper RLPHRA disclosures, discovered his son's lead poisoning in 2008, and filed his RLPHRA suit on February 9, 2010. The district court dismissed the case as time-barred, and the First Circuit affirmed. In affirming, the First Circuit concluded that the case was time-barred even if the discovery rule applied:

> Because at the time of closing Randall had discovered (or at a minimum should have discovered) that the City had not completed the disclosure form or made any of the compulsory disclosures, the statute of limitations clock started ticking. It is not necessary that Randall knew the full extent of, or the particulars of, the City's wrongful conduct. . . . Even applying the discovery rule, Randall's cause of action still accrued when he closed on the property on July 22, 2003.

*Id.* at 7-8. Given this holding, I likewise concluded that, even if the discovery rule applied, the Grosses' four-year clock began running on November 10, 2006 when they took ownership of the house.

In their motion for reconsideration, however, the Grosses make a persuasive argument that my reliance on *Randall* was misplaced. Referring back to the district court's opinion in *Randall*, the Grosses point out that it was far easier to impute notice to the plaintiff under the facts of that case because at the time he purchased the house he had signed a form titled "Disclosure of Information on Lead–Based Paint and Lead–Based Paint Hazards FOR HOUSING SALES." *Randall v. City of Laconia*, 2011 WL 1085679, at *1 (D.N.H. 2011). The

disclosures listed on that form were never actually provided to him – this is the reason he had a

cognizable RLPHRA claim in the first place – but by signing the form it was easier to find that

he was at least generally on notice about the existence of the RLPHRA disclosure requirements.

This was a vitally important fact for the district court's analysis about when the plaintiff could

reasonably have discovered his claim:

> Given that Randall signed his portion of the disclosure form in May of 2003, and discussed it with his agent at that time, there was nothing to prevent Randall from discovering his injury, *i.e.*, his lack of Title X disclosure when he took title, at the time he was injured.  That is, there is no basis for determining that Randall's injury "could not reasonably have been discovered at the time of the act or omission."  So, too, with the causal relationship between Randall's injury (his lack of Title X disclosure) and the City's act or omission (its failure to provide Title X disclosure).  There was nothing to prevent Randall from understanding, at the time of his injury, that his injury resulted directly from the City's failure to provide him with the disclosure form his agent had told him to expect from the City.

*Id*. at *2 (internal citations omitted).

As the Grosses point out, there is no similar fact in this case (at least at this point), and it

thus is more difficult to conclude that they reasonably should have known about the disclosure

requirements at the time they purchased their house.  As they put it in their motion:

> Quite simply, there is nothing within the Plaintiffs' Complaint that supports that, at the time of signing the Lease on November 10, 2006, the Plaintiffs were aware or should have been aware of the Defendants' failure to provide the statutorily required disclosures. By reason of this fundamental difference between the facts that supported the First Circuit's decision in *Randall* and the facts that exist in the present case, the First Circuit's decision in *Randall* is not "directly applicable to this case," but rather is readily distinguishable from it.

[DE 21 at 11.]

This point is well taken, and I agree that *Randall* is not as controlling as I first concluded.

So, without *Randall* as a guide, the statute-of-limitations analysis has to be restarted from square

one.  In the Grosses' three-step reboot of that analysis, they argue that their Complaint was timely filed and that dismissal was erroneous.  First, they argue that district courts should be extra cautious about dismissing cases as time-barred at the motion to dismiss stage.  Thus, a court must ask whether "there is *any* set of facts that if proven would establish a defense to the statute of limitations."  *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003).  Second, the discovery rule applies to Section 1658(a) and to RLPHRA claims.  Third, the Grosses did not "discover" that they had suffered the harm of not receiving the proper disclosures until August 18, 2009, when they first met with an "attorney concerning their rights with respect to the lead hazards in their home and the lead poisoning that was suffered by Sierra."  [DE 21 at 4.]  Those three steps bring the Grosses to the following conclusion:

> [T]he Plaintiffs' claims did not accrue until the Plaintiffs discovered an injury resulting from the Defendants' unlawful act.  As explained above, this discovery did not occur until August 18, 2009.  And, under the facts of this case, it is not reasonable to conclude that the Plaintiffs should have discovered their injury any earlier.  The Plaintiffs filed their Complaint against the Defendants on November 9, 2011, which is well within the four year limitations period set forth in 28 U.S.C. § 1658(a).  Accordingly, the Plaintiffs' Complaint was timely filed.

[DE 21 at 5.]

The big catch in this analysis, however, is that it depends on the discovery rule applying to Section 1658(a) and to RLPHRA claims.  Neither my original opinion, nor *Randall*, nor any other case I know of has directly addressed that issue.  In fact, as noted, I explicitly dodged the discovery rule's "legal morass" in my earlier opinion.  Without *Randall*, however, there's now no avoiding that maze.

It's a difficult and winding path through this legal landscape, so I will start with a very basic map of where we're headed.  First, as explained in detail below, I conclude that the

discovery rule does not apply to Section 1658(a) and RLPHRA claims. As a result, the discovery rule does not apply to the Grosses' Complaint and does not work to make it timely filed. Second, another principle of statute-of-limitations law – equitable tolling – also does not apply to the facts of this case. As a result, equitable tolling also does not work to make the Complaint timely filed. The end result is that the Grosses' Complaint is time-barred and must remain dismissed.

## ANALYSIS

### I. The Discovery Rule

The first issue is whether the discovery rule applies to Section 1658(a) and RLPHRA claims. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990) is the North Star by which statute-of-limitations issues are oriented in this circuit. Indeed, as will become apparent in the pages that follow, its discussion of the discovery rule and equitable tolling guides much of this opinion. There is, however, one small-but-important component of *Cada* that I have come to regard as being no longer good law: its one-sentence discussion of the discovery rule's application to federal statutes. Here's *Cada*'s unequivocal statement on the issue:

> The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the "discovery rule" of federal common law, **which is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law) in the absence of a contrary directive from Congress**.

*Id.* at 450 (emphasis added).

The idea that the discovery rule applies to every federal statute of limitation is a brief point – almost an aside, really – but its implications are huge. The Grosses cite this language and conclude that it is obvious that, since the discovery rule is generally read into every federal

7

statute, the discovery rule applies to Section 1658(a) and RLPHRA claims. The Grosses'

position on this point is particularly understandable given the unequivocal nature of *Cada*'s

statement and the fact that in the intervening 20+ years the Seventh Circuit and its district courts

have routinely followed that statement in finding that the discovery rule applies to various

federal statutes. *See*, *e.g.*, *In re Copper Antitrust Litigation*, 436 F.3d 782, 789 (7th Cir. 2006)

(antitrust statutes); *Sellars v. Perry*, 80 F.3d 243, 245-46 (7th Cir. 1996) (42 U.S.C. § 1983);

*Ferguson v. Roberts*, 11 F.3d 696, 704-05 (7th Cir. 1993) (Securities Exchange Act of 1934);

*Johnson v. Garza*, 564 F. Supp. 2d 845, 850-851 (N.D. Ill. 2008) (42 U.S.C. § 1983); *McIntyre v.*

*Household Bank*, 2004 WL 2958690, at *12 (N.D. Ill. 2004) (Truth in Lending Act); *Griffin v.*

*Humana Wis. Health Org. Ins. Corp.*, 2001 WL 36027988, at *3 (E.D. Wis. 2001) (Employment

Retirement Income Security Act).

Nevertheless, I have come to regard *Cada*'s position on the application of the discovery

rule to federal statutes as obsolete, caught in something of doctrinal echo chamber. As laid out

in detail below, I believe that recent opinions from the Supreme Court and Seventh Circuit

demonstrate that *Cada*'s default rule is overly broad and that reliance on it is now misplaced.

### 1. *TRW,* *Koenig,* **and the Historical Roots of the Discovery Rule**

The first data point in this analysis is the Supreme Court's decision in *TRW Inc. v.*

*Andrews*, 534 U.S. 19 (2001). In addressing whether the discovery rule applied to the Fair

Credit Reporting Act ("FCRA"), the Court stated that it was "not oblige[d] . . . to decide"

whether "a presumption exists [that] all federal statutes of limitations, regardless of context,

incorporate a general discovery rule unless Congress has expressly legislated otherwise." *Id.* at

27 (internal quotations omitted). But even while leaving the ultimate issue unresolved, the Court

consistently called into question the idea that the discovery rule was the wide-ranging, default presumption for all federal statutes of limitations. The Court pointed out that certain types of cases – like those involving "fraud or concealment . . . latent disease and medical malpractice" – clearly require a rule that tolls the statute of limitations until the injury is discovered. *Id.* Those specific cases, however, do "not establish a general presumption" that the discovery rule is "applicable across all contexts." *Id.* Instead, the question of whether the rule applies depends on the particular statute at issue – its language and the injuries it seeks to remedy. *Id.* at 27-28. Thus, for instance, the Court went on to analyze the FCRA and concluded that it "does not govern an area of law that cries out for application of the discovery rule." *Id.* at 28.

If *TRW*'s holding raised serious questions about the continuing viability of the broad default rule stated in *Cada*, Justice Scalia's concurring opinion left no room for it whatsoever. Justice Scalia explained that various Courts of Appeals had improperly expanded the discovery rule beyond its relatively circumscribed origins. As he put it: "The injury-discovery rule applied by the Court of Appeals is bad wine of recent vintage. Other than our recognition of the historical exception for suits based on fraud, we have deviated from the traditional rule and imputed an injury-discovery rule to Congress on only one occasion . . . for latent medical injuries." *Id.* at 37-38 (internal citations omitted). Justice Scalia cited the Court's nineteenth-century decision in *Amy v. Watertown (No. 2)*, 130 U.S. 320, 323–324 (1889): "[T]he cases in which the statute of limitations may be suspended by causes not mentioned in the statute itself are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it." *Id.* at 38 (internal brackets omitted). Justice Scalia concluded that the discovery rule only applies when there is definitive language in the

"statute to contradict the rule that a statute of limitations begins to run when the cause of action is complete." *Id.* at 39.

Justice Scalia didn't explicitly reference *Cada* (or any other appellate opinion for that matter), but its broad default rule is exactly the sort of "bad wine" he was referring to. Moreover, the Seventh Circuit recently picked up on *TRW*'s thread in *S.E.C. v. Koenig*, 557 F.3d 736 (7th Cir. 2009). In that case, the Seventh Circuit explained the district court's error in assuming that the discovery rule applies to all federal statutes:

> Koenig maintains that claims under federal law accrue when the violations occur, not when agencies learn about them. Section 2462 gives a federal agency five years "from the date when the claim first accrued" to seek a fine, forfeiture, or other penalty. In *United States v. Kubrick*, 444 U.S. 111 (1979), the Justices read a statute with the same reference to the claim's accrual to start the clock when the plaintiff knows both loss and causation – in other words, when the wrong is discovered. (*Kubrick* added that a would-be plaintiff need not know that the injury is a legal wrong; only the injury and its cause, and not potential for a legal remedy, need be discovered.) The district court treated *Kubrick* and similar decisions as establishing a norm that federal statutes of limitations do not begin to run until the claim has been discovered. This is a common view, *see Rotella v. Wood*, 528 U.S. 549, 555 (2000), but the Supreme Court pointedly remarked in *TRW, Inc. v. Andrews*, 534 U.S. 19, 27 (2001) that "we have not adopted that position as our own." *TRW* concludes that some periods of limitations start with discovery and others not, with the difference depending on each provision's text, context, and history.

*Id.* at 739. The *Koenig* opinion does not go on to say that *Cada*'s broad default rule is no longer good law in the face of *TRW*, but it's difficult to draw any other conclusion. *See also S.E.C. v. Bartek*, __ F.3d __, 2012 WL 3205446, at *4 (5th Cir. Aug. 7, 2012) ("*Koenig* correctly asserted that the Supreme Court has not adopted a general blanket discovery rule with respect to interpreting federal statutes of limitations . . . ."); *United States v. Midwest Generation, LLC*, 781 F. Supp. 2d 677, 692 (N.D. Ill. 2011) ("Although the Seventh Circuit has not directly addressed

the meaning of 'accrued' in 28 U.S.C. § 2462, it recently noted [in *Koenig*] that the Supreme Court has not adopted a general discovery rule in interpreting federal statutes of limitations.").

This conclusion, in fact, is consistent with earlier decisions from the Seventh Circuit and the Supreme Court, which consistently held that the application of the discovery rule should be judged on a case-by-case analysis. In 1971, the Seventh Circuit held that "[i]n *certain instances*, the critical date [for the statute of limitations] is the point at which the injury becomes apparent." *Cooper v. U.S.*, 442 F.2d 908, 911 (7th Cir. 1971) (emphasis added). Deciding whether a particular case was one of those "certain instances" depended on "[t]he particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged." *Id.* In *Stoleson v. United States,* 629 F.2d 1265 (7th Cir. 1980), the court held that "the applicability of the discovery rule" depends on "the nature of the problems faced by a plaintiff in discovering his injury and its cause." *Id.* at 1269. Thus, the discovery rule applies to a claim "that *could not* have been discovered by the date on which it arose." *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 734 (7th Cir. 2010) (emphasis added).

## 2. Baseline Principles for Judging the Applicability of the Discovery Rule

I think a number of analytical principles can be extracted from all of the caselaw outlined above. First, notwithstanding the expansive language in *Cada*, the discovery rule does not automatically apply to every federal statute. *TRW*, 534 U.S. at 27. In other words, "some periods of limitations start with discovery and others not." *Koenig*, 557 F.3d at 739. Indeed, the "traditional rule" is that the discovery rule does not apply and "the cases in which the statute of limitations may be suspended by causes not mentioned in the statute itself are very limited in

character, and are to be admitted with great caution." *TRW*, 534 U.S. at 38 (Scalia, J., concurring) (quoting *Watertown (No. 2)*, 130 U.S. at 323–324).

Second, deciding whether the discovery rule applies in any given case depends on the particular language of the statute of limitations at issue and the type of injury the plaintiff has suffered. So whether the discovery rule applies to a statute depends "on each provision's text, context, and history." *Koenig*, 557 F.3d at 739. Courts should consider, "the particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged." *Cooper*, 442 F.2d at 911.

Third, some types of injuries – fraud, concealment, latent disease, and medical malpractice – simply "cry out" for the application of the discovery rule. *TRW*, 534 U.S. at 28. These are cases where the injury is particularly hard to detect at its inception such that "it could not have been discovered by the date on which it arose." *Chang*, 599 F.3d at 734. In such cases, the "plaintiff cannot be said to know of the injury – although incurred or instigated at an earlier point in time – until it manifests itself to the individual." *Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990). The distinguishing feature for the injuries in these cases is that they are "unknown and inherently unknowable" at the time they happen. *Urie v. Thompson*, 337 U.S. 163, 169 (1949). This means not that it was just *difficult* to discover the injury, but rather that it was nearly *impossible* to discover it either because immediate discovery is actively being prevented (fraud and concealment) or would require technology and expertise well beyond what an ordinary citizen could possess (latent disease and medical malpractice). Thus, the discovery rule applies when the injury is "*inherently unknowable*," *id.* (emphasis

added), such that "it *could not* have been discovered by the date on which it arose," *Chang*, 599 F.3d at 734 (emphasis added).

### 3. Applying these Baseline Principles to Section 1658(a) and RLPHRA

With the baseline principles outlined above, we can analyze whether the discovery rule applies to Section 1658(a) and RLPHRA claims.

It's important at the outset to recognize a quirk in analyzing the discovery rule here. When courts analyze whether the discovery rule applies to a particular cause of action, usually the substantive cause of action and its limitations period are contained within the same statute. *See*, *e.g.*, *TRW*, 534 U.S. at 22-35 (addressing whether the discovery rule applied to the two-year statute of limitations contained within the FCRA). That's obviously not the case here, however, where instead we are dealing with a catch-all statute of limitations (Section 1658(a)) and a substantive cause of action (RLPHRA) that have no intrinsic link. So, in analyzing whether the discovery rule applies here, do we focus on Section 1658(a), RLPHRA, or both? I think the only sensible way to proceed is to focus on both at once. As we have seen, the analysis of the discovery rule depends in large part on *both* the substantive injury being remedied and the text/context of the statute of limitations. It would make little sense to consider either Section 1658(a) or the RLPHRA in a vacuum.[3]

---

[3] My ultimate conclusion that the discovery rule does not apply here should not necessarily be read as a conclusion that the discovery rule could never apply to Section 1658(a). If, for instance, Section 1658(a) applied to a federal cause of action for some latent disease or fraud, it could very well make sense to find that the discovery rule applied. But examples like that simply confirm that the analysis should take into account *both* Section 1658(a) and the substantive cause of action at issue.

I note as well that I have unearthed only one other case that addresses the discovery rule in the context of 1658(a), *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825 (D. Md. 2011), a case where the underlying cause of action derived from the Telephone Consumer Protection

So, a few things are clear here.  To begin with, the discovery rule does not *automatically* apply to Section 1658(a) and RLPHRA.  It *may* apply, but deciding whether it does depends on two central factors.  First, whether Section 1658(a)'s "text, context, and history" (*Koenig*, 557 F.3d at 739) give any indication of Congress's intent either to include or to exclude the discovery rule.  Second, whether RLPHRA is "an area of the law that cries out for application of a discovery rule" (*TRW*, 534 U.S. at 28) like other areas of law where the discovery rule has become well-established (fraud, latent disease, medical malpractice, etc.).

With this two-pronged analysis, I think it's clear the discovery rule does not apply here. First, the text, context, and history of Section 1658(a) give no indication that Congress intended to incorporate the discovery rule.  Cases analyzing Section 1658(a) in this context are essentially nonexistent, but there are cases analyzing an analogous federal catch-all statute – 28 U.S.C. § 2462, which applies to actions brought by the United States.  It's useful to compare the text of these two catch-all statutes.  Section 1658(a) states, in relevant part:  "[A] civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."  In comparison, Section 2462 states, in relevant part:  "[A]n action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . ."

Neither of these statutes makes any express reference to "discovery."  Rather, both are explicit that its limitations period starts ticking as soon as the claim "accrues" or "first accrued."

---

Act (TCPA).  That decision assumed that the discovery rule applied to TCPA claims and Section 1658(a), but it did so without any substantive analysis or discussion of the issue whatsoever, so its usefulness here is limited.  *Id.* at 842.

In the context of Section 2462, numerous courts have found that its focus on accrual means that the discovery rule does not apply. As the Fifth Circuit put it earlier this year, "[a] plain reading of § 2462 reveals no discovery rule exception." *Bartek*, 2012 WL 3205446, at *3. *See also Trawinski v. United Techs.*, 313 F.3d 1295, 1298 (11th Cir. 2002) (discovery rule does not apply to Section 2462); *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996) (same); *3M Co. v. Browner*, 17 F.3d 1453, 1460-63 (D.C. Cir. 1994) (same); *Midwest Generation, LLC*, 781 F. Supp. 2d at 692 (same).

Indeed, in *Koeing* the Seventh Circuit itself recognized the general "support [among] other circuits" that Section 2462 does not incorporate the discovery rule. *Koenig*, 557 F.3d at 739. The Seventh Circuit ultimately declined to provide its own definitive ruling on that issue because the particular facts of the case involved fraud: "We need not decide when a 'claim accrues' for the purpose of § 2462 generally, because the nineteenth century recognized a special rule for fraud, a concealed wrong." *Id.*[4] Nevertheless, the Seventh Circuit's recognition of the broad consensus that the text of Section 2462 does not incorporate the discovery rule supports the conclusion that the text of Section 1658(a) also does not incorporate the rule.

Furthermore, the statute's history and context provide additional support for the argument that Section 1658(a) does not incorporate the discovery rule. Congress passed the four-year catch-all statute of limitations in 1990, and it only became subsection "(a)" of Section 1658 in 2002 when Congress added subsection "(b)" as part of the Sarbanes-Oxley Act. Section 1658(b) states:

---

[4]*Koenig*'s ruling in this respect further confirms the aforementioned wisdom of analyzing a catch-all statute of limitations (like Section 2462) in conjunction with the substantive cause of action (like fraud) for purposes of deciding the applicability of the discovery rule.

(b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--

(1) 2 years after the discovery of the facts constituting the violation; or

(2) 5 years after such violation.

28 U.S.C. 1658(b).  This is a perfect example of what Congress can do when it wants to explicitly incorporate the discovery rule into a statute of limitations.  The fact that Congress did not originally include language like this in Section 1658(a), combined with the fact that it left subsection (a) completely unchanged when it added subsection (b), indicates that it had no intention of incorporating the discovery rule into Section 1658(a).  Thus, the text, context, and history of Section 1658(a) all suggest that the discovery rule does not apply.

Nor does the substance of RLPHRA provide support for application of the discovery rule here.  It's important to remember the exact injury for which RLPHRA provides a remedy.  As detailed throughout my August 2, 2012 Opinion, RLPHRA does not provide a remedy for lead-paint poisoning itself.  If it did, then it would be easy to argue for the application of the discovery rule since it would fit perfectly into one of the well-established applications of the rule – latent disease.  Instead, however, RLPHRA only provides a cause of action for the failure to be given the proper disclosures.  *See*, *e.g.*, *Mason ex rel. Heiser v. Morrisette*, 403 F.3d 28, 31 (1st Cir. 2005) ("a violation of [RLPHRA] occurs when the seller or lessor fails to disclose").

The failure to receive RLPHRA's required disclosures is not an injury that is  "unknown and inherently unknowable." *Urie*, 337 U.S. at 169.  The Grosses could have discovered that the disclosures were required with some relatively basic research into the law surrounding the

process of buying their home. It is, to be sure, *difficult* for an average citizen to discover that these disclosures are required by law. After all, why would one look for the necessary disclosures in the absence of any problem with lead paint? But this difficulty does not make discovery inherently unknowable in the same way as fraud, concealment, latent disease, or medical malpractice.

So given the text of Section 1658(a) and the substantive remedy provided for by RLPHRA, I find that the discovery rule does not apply to this case. Without the discovery rule, the statute-of-limitations analysis is straightforward: the Grosses four-year clock started ticking when they were not provided the proper disclosures on November 10, 2006, they had until November 10, 2010 to file their lawsuit, and this suit was filed one-year too late on November 9, 2011. Thus, unless they can point to some other tolling doctrine, the Grosses' claim is time-barred.

## II.    Equitable Tolling

The only other tolling principle that would help the Grosses avoid the statute of limitations is equitable tolling, which "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451. Equitable tolling is, however, of no assistance to the Grosses under the facts of this case.

Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is "a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S.

17

384, 396 (2007). Thus, "[e]quitable tolling is rarely granted" and is applied "sparingly[,] only when extraordinary circumstances far beyond the litigant's control prevented timely filing." *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir. 2010). *See also Wilson v. Battles*, 302 F.3d 745, 749 (7th Cir. 2002) ("[E]quitable tolling will apply only to exceptional cases, regardless of how minimal the delay in filing."); *United States v. Martello*, 212 F.3d 1005, 1010 (7th Cir. 2000) ("Extraordinary circumstances far beyond the litigant's control must have prevented timely filing.").

It's hard to see how the circumstances of this case qualify as particularly extraordinary or unusual. *See*, *e.g.*, *Janssen v. Pugh*, 394 Fed. App'x. 305, 306 (7th Cir. 2010) ("run-of-the-mill difficulties" such as lacking knowledge about the law are not extraordinary circumstances); *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling."). But even assuming these are extraordinary circumstances, equitable tolling doesn't work in the way the Grosses seem to believe. In their view, since they didn't know about their cause of action until they met with their attorney on August 18, 2009, they then had four years from that day to file their lawsuit.[5]

_____

[5]The Grosses argument that, in the context of equitable tolling, they should have had four years from the date they first met with their attorney is fleshed out it their reply brief. *See* DE 23 at 4-13. They compare the facts of this case to *Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir. 1978), *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1978), and *Cortez v. Medina's Landscaping, Inc.*, 2002 WL 31175471 (N.D. Ill. 2002.). The first two of these cases held that a plaintiff's 180-day timeframe within which to file an ADEA notice of intent to sue begins "to run when the employee either retains an attorney or acquires actual knowledge of his rights under the ADEA." *Kephart*, 581 F.2d at 1289. However, given the Seventh Circuit's more recent unequivocal statements that a plaintiff is *not* afforded the full statutory period in the context of equitable tolling (as explained below), and given the comparatively short statute of limitations in those cases (180 days compared to four years here),

18

That's how the discovery rule would work if it applied here – a plaintiff gets the full

limitations period from the date the injury is discovered – but that's decidedly not how equitable

tolling works. Equitable tolling doesn't reset the statute of limitations; rather, it suspends the

running of the statute of limitations only "for such time as was reasonably necessary to conduct

the necessary inquiry." *Id.* at 451. Thus, "a plaintiff who invokes equitable tolling to suspend

the statute of limitations must bring suit within a reasonable time after he has obtained, or by due

diligence could have obtained, the necessary information." *Id.* at 453. Judge Posner recently

crystalized this principle: "Equitable tolling permits a plaintiff to delay suing beyond the

statutory limitations period if he is unable despite all due diligence to sue within the period; **but**

**as soon as he is able to sue he must. He is denied the benefit of the full statutory period.**"

*Wallace v. City of Chicago*, 440 F.3d 421, 431 (7th Cir. 2006) (Posner, J., dissenting) (emphasis

added).

So in the context of equitable tolling, the question is not, "Did the Grosses file their suit

within four years of meeting with their attorney and discovering their claim?" Rather, the

question is, "Was it reasonable to wait 27 months (from August of 2009 to November of 2011) to

file suit after meeting with their attorney and discovering their claim?"

Under unequivocal Seventh Circuit precedent, the answer to this question is a resounding

no. In the context of equitable tolling, the Seventh Circuit has consistently found delays of

weeks and months – to say nothing of *years*, as is the case here – to be unreasonable. For

_____

I find their holdings unavailing. Similarly, *Cortez*'s holding with respect to the timeliness of a
Fair Labor Standards Act case would be inapplicable here if it was based on the discovery rule
(*see Cortez*, 2002 WL 31175471, at *6, n.8), and to the extent it was based on equitable tolling
the court cited the plaintiff's "promptness" in filing suit less than a month from discovering his
claim (an alacrity not present in this case). *Id.*

instance, in *Thelan v. Marc's Big Boy Corp.*, 64 F.3d 264 (7th Cir. 1995), the Seventh Circuit held that a delay of 10 months to file a charge with the EEOC was unreasonable, finding that the plaintiff "could have filed his administrative complaint within days, and at most weeks" from the date he learned of his claim. *Id.* at 268. *See also Elmore v. Henderson*, 227 F.3d 1009, 1013 (7th Cir. 2000) (equitable tolling not available where plaintiff delayed four months); *Athmer v. C.E.I. Equip. Co., Inc.*, 121 F.3d 294, 297 (7th Cir. 1997) (equitable tolling not available where plaintiff delayed six weeks); *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1212–13 (7th Cir. 1993) (refusing to apply equitable tolling because after discovering his claim the plaintiff "still had several months to [timely] file his claim but he failed to do so"); *Cada*, 920 F.2d at 452 (declining to apply equitable tolling doctrine because plaintiff "could have prepared an adequate administrative complaint within days" of discovering he had been replaced by a younger individual).

The unreasonableness of the delay here is underscored by the fact that the four-year limitations period still had 15 months left on it when the Grosses met with their attorney in August of 2009. The Seventh Circuit faced the same circumstances in *Cada* – *i.e.*, discovery of the claim prior to the expiration of the limitations period – and explained why equitable tolling did not apply:

> When as here the necessary information is gathered after the claim arose but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period and should have done so. The presumption will be more easily rebuttable the nearer the date of obtaining the information is to the date at which the statutory period runs out. In this case the interval was eight months, huge in the circumstances.

*Id.* at 453.

In the end, the equitable tolling analysis is straightforward in this case: delaying to file suit for 27 months was "huge in the circumstances," such that the Grosses did not "bring [their] suit within a reasonable time" and thus cannot "invoke[] equitable tolling to suspend the statute of limitations." *Id.*

## CONCLUSION

I am cognizant of the fact that courts should be reluctant to dismiss complaints as time-barred, so much so that a Complaint should be allowed to stand so long as "there is *any* set of facts that if proven would establish a defense to the statute of limitations." *Clark*, 318 F.3d at 768. In this case, however, the only defense the Grosses have to the statute of limitations is the application of either the discovery rule or equitable tolling, and neither of those principle applies, for all the reasons stated above. Plaintiffs' Motion for Reconsideration [DE 21] is therefore **DENIED**.

**SO ORDERED**.

ENTERED: October 30, 2012

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT